**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 13 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TIMOTHY J. LEMON**
Knox, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD HUMPHREY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  75A04-1111-CR-607 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable Kim Hall, Judge
Cause No.  75C01-1010-FC-39

**July 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

## STATEMENT OF THE CASE

Donald Humphrey appeals his convictions for intimidation, as a class C felony,[1] and intimidation, as a class D felony.[2]

We affirm.

## ISSUE

Whether the State presented sufficient evidence to support the convictions.

## FACTS

In 2009, Sandra Brooke left her husband David Palm after thirty-three years of marriage. For two weeks, Palm tried to locate Sandra until he finally discovered that she was staying with her brother, Jeff Brooke. Palm tried to contact Sandra by calling Jeff's house phone.

In October of 2009, Palm went to Jeff's house to talk to Sandra about their marriage. Sandra came outside to Palm's truck, which he had parked in the driveway, and talked to him for about fifteen minutes. While Sandra and Palm were conversing, Jeff came out and told Palm that he needed to leave his property and that he should never come back. After Jeff told Palm that he was not welcome on Jeff's property, Palm replied, "Okay." (Tr. 120). While at Jeff's house, Palm encountered Humphrey riding on a lawn mower. Before this instance, Palm does not recall ever having any contact with Humphrey.

---

[1] Ind. Code § 35-45-2-1(b)(2).

[2] I.C. § 35-45-2-1(b)(1).

2

After Palm's visit to Jeff's house to talk to Sandra, he spoke with her a few times on the phone. He also went to her job on one occasion and was told not to return. Palm did not return to Jeff's house or Sandra's job.

On or about December 2, 2009, Palm received a call on his cell phone. The caller identified himself as Humphrey, who said he was going to kill Palm. After hearing this threat, Palm hung up the phone and approximately five minutes later Humphrey called back again, but this time Humphrey said that "he was going to bring half of Parkview with him to [Palm's] house and beat [Palm] to death with a ball bat . . . ." (Tr. 123). Palm stated that he received three threatening phone calls from Humphrey. Also, Humphrey "went by [Palm's] house and he yelled out the window that he was going to kill [Palm]." (Tr. 124). Palm called the Starke County Sherriff's Department and made a police report regarding the phone calls.

On or about December 14, 2009, Palm was at his home when he saw what he recognized as Jeff's Jeep drive past. Palm waited, and the Jeep went past Palm's house for a second time. At that time, Palm believed that Jeff and most likely Humphrey were in the Jeep. Palm then left his house with his friend, Tim, who drove to another friend's house. As they were driving, Palm saw that Jeff had parked "sideways in the middle of the road." (Tr. 133). Next, Humphrey jumped out of the Jeep wearing a ski mask, waved a knife, and said, "You don't know who I am, but I am going to kill you." *Id*. Tim backed the car up, went around the Jeep, and continued to their friend's house.

While at his friend's house, Palm called Sandra and informed her that Jeff had parked his Jeep in the middle of the road and that Humphrey, with a knife in his hand,

3

had gotten out of the Jeep and threatened to kill Palm. Palm also called the sheriff's department before he and Tim drove back to meet with the police. During the time that Palm was at his house waiting for the police, his friend Sam came over. Additionally, Jeff and Humphrey came back in the Jeep and pulled up near Palm's house. Humphrey, armed with a knife, got out of the Jeep and proceeded to walk across the yard of Palm's neighbor toward Palm's house. As Humphrey got closer to Palm, Humphrey yelled out once again that he was going to kill him.

After hearing this threat, Palm told his two friends, Tim and Sam, to stay put and then went to retrieve his old ax handle. When Palm came back he could not find Humphrey, but Tim or Sam said that he was hiding behind a woodpile. Humphrey, who was still hiding behind the woodpile, threatened three or four more times to kill Palm. Palm then told Humphrey to come out from behind the woodpile. Humphrey came out, saw that Palm was wielding the ax handle, and ran across the road. Meanwhile, Jeff drove his jeep straight toward Palm. Palm thought Jeff was going to run him over so he jumped out of the way and swung the ax handle two or three times, hitting Jeff's Jeep with it. Jeff then drove away.

Officer Kelly Fisher arrived at Palm's residence after Jeff had already left. Believing she may have passed Jeff's Jeep on her way to Palm's residence, she got back in her car to look for Jeff but could not locate him. Shortly thereafter, Officer Fisher returned to Palm's house. Sandra showed up at Palm's house and stayed for a few minutes before Officer Fisher told her to leave or she would arrest her for causing a commotion.

4

After staying at Palm's residence for about ten minutes, Officer Fisher went to look for Humphrey. Officer Fisher sat in her squad car and used thermal imaging to locate a man walking nearby. She got out of her car, went up to the man, and asked him his name. The man identified himself as Donald Humphrey and stated that he knew there were warrants out for his arrest. Officer Fisher handcuffed Humphrey and proceeded to pat him down. During the pat down, Officer Fisher discovered a hunting knife in Humphrey's jacket.

On October 21, 2010, the State charged Humphrey with count I, class C felony intimidation; count II, class C felony intimidation; count III, class D felony intimidation; and count IV, class B misdemeanor harassment.

The jury found Humphrey guilty as charged on August 26, 2011. Following a sentencing hearing on October 26, 2011, the trial court sentenced Humphrey to six years for counts I and II, two years for count III, and six months for count IV. The trial court ordered the sentences to be served concurrently.

### DECISION

Humphrey asserts that the evidence is insufficient to support his three convictions for intimidation. Specifically, Humphrey contends that the State failed to show that his threats to Palm were intended to place him in fear of retaliation for prior lawful acts.

> Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. We will consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. A conviction may be based upon circumstantial

5

evidence alone. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense.

*Lainhart v. State*, 916 N.E.2d 924, 939 (Ind. Ct. App. 2009) (internal citations omitted).

To support a conviction for class D felony intimidation in this case, the State was required to show that Humphrey: (1) communicated a threat; (2) which was to commit a forcible felony; (3) to another person; (4) with the intent that the other person be placed in fear of retaliation for a prior lawful act. I.C. § 35-45-2-1(b)(1). For a class C felony intimidation conviction, the State had to show that Humphrey: (1) communicated a threat; (2) to another person; (3) with the intent that the other person be placed in fear of retaliation for a prior lawful act; (4) while drawing a deadly weapon. I.C. § 35-45-2-1(b)(2). To convict Humphrey as charged for the class D felony, the State had the burden to show that the lawful act was Palm contacting Sandra about their separation. Additionally, for the class C felonies, the State had to show that the lawful act was Palm going to Jeff's home to talk to Sandra about their separation.

On at least three occasions, Humphrey threatened to kill Palm and placed him in fear of retaliation for calling Sandra a few times and going to talk to her once at Jeff's residence and once at Sandra's job. On December 2, 2009, Humphrey called Palm on his cell phone and threatened to kill him. Furthermore, on December 14, 2009, Humphrey went to and near Palm's residence and threatened multiple times to kill Palm, while wielding a knife.

Humphrey contends that he responded to Palm's actions because they were prior unlawful acts, not lawful acts. Humphrey alleges that Palm committed the unlawful

6

acts of harassing and stalking Sandra and trespassing on Jeff's property. The jury did not find any evidence in the record that shows that Palm either harassed or stalked Sandra. Palm testified that he only went to Jeff's house and Sandra's job once and called Sandra a few times in hopes of talking to her about their marriage.[3] Palm further testified that "[he] had 33 years of [his] life wrapped up with [Sandra]. [He] wanted some kind of explanation." (Tr. 121). Sandra may have been annoyed or bothered by Palm contacting her, but those contacts did not constitute unlawful acts. Additionally, the jury found that Palm did not trespass on Jeff's property. Palm testified that he did not return to Jeff's residence after Jeff told him not to come back. Humphrey wants us to believe the testimonies of Sandra and Jeff instead of Palm's testimony, but we will not reweigh the evidence or judge the credibility of the witnesses.

Given the above facts, the jury could reasonably infer that Humphrey intended to place Palm in fear of retaliation for prior lawful acts by threatening him over the phone and in person with a knife. Thus, we find the evidence sufficient to support Humphrey's convictions for intimidation.

Affirmed.

NAJAM, J., and RILEY, J., concur.

---

[3] At trial, Sandra and Jeff testified that Palm went to Jeff's house on December 14, 2009, but the jury chose not to believe these testimonies.

7